IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JAMES DWAYNE MCCALISTER, ) | |
| ) | |
| *Petitioner*, ) | |
| ) | |
| v. ) | Criminal Case No. 1:10-cr-446 |
| ) | Civil Action No. 1:13-cv-1187 |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Respondent*. ) | |

### MEMORANDUM OPINION

This matter comes before the Court on Petitioner James Dwayne McCalister's Motion to Vacate under 28 U.S.C. § 2255. Dkt. No. 324. The government filed a response, to which Petitioner replied. Dkt. Nos. 331, 334. Petitioner also filed a supplemental brief. Dkt. No. 335. The government has informed the Court that it does not intend on filing a response to the supplemental pleading and considered the matter fully briefed. For the reasons stated below, the motion will be denied.

### I. Background

From June to October 2010, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted an undercover investigation involving Petitioner and other co-conspirators. In June 2010, an ATF confidential informant introduced three undercover law enforcement officers ("UCs") to Defendant Phun, who was based in Philadelphia. During the meeting, they discussed Phun's large-scale marijuana trafficking as well as a potential armed robbery of a narcotics "stash house" in Virginia. Following this initial meeting, Phun met with the UCs from June 2010 to October 2010, exchanging contraband cigarettes for marijuana.

On October 6, 2010, Phun met with the UCs in Fairfax County, Virginia to discuss the logistics of the stash house robbery. The UCs provided Phun with pictures of motels, explaining

1

that these were the locations where one UC had previously picked up kilograms of cocaine. The UC explained that when he arrived to collect the drugs, he observed ten kilograms of cocaine and was met by three or four armed individuals. Phun then explained that he had access to ballistic vests as well as FBI raid jackets and hats, and that he and his associates could pose as law enforcement during the robbery. The UCs informed Phun that the cocaine would arrive at the stash house in three weeks.

On October 21, 2010, the UCs met with Phun, Defendant Johnson, and a third unnamed individual at a Famous Dave's restaurant in Philadelphia to discuss the upcoming robbery. The UCs explained the seriousness of the robbery and questioned the Defendants' desire to conduct it. Defendants agreed that they wished to go through with it. Johnson confirmed that the crew would bring their own firearms for the task. At the end of the meeting, the UCs informed Defendants that the cocaine would arrive in Virginia the following Thursday. Defendants agreed that they would travel to Virginia on Wednesday and conduct the robbery on Thursday.

On October 28, 2010, the remaining Defendants, including Petitioner, arrived in Virginia to conduct the robbery. Defendant Un contacted the UCs and arranged to meet at a gas station in Fairfax County, Virginia. Around 11am, the UC arrived at the gas station where Defendants were parked in a white Suburban. Un and Johnson approached the UC where they shook hands. The UC then advised the Defendants to follow him to a storage facility where the rental car to be used for the robbery was located.

After following the UCs to a storage facility, Defendants Un, Johnson, and Min indicated that they were ready to do the job, and stated that the firearms were in the white Suburban. After more discussion, the UC suggested that they transfer the firearms from the Suburban to the rental. Un then walked to the Suburban and engaged in conversation with Defendant Stevens and Petitioner. Ten minutes later, Stevens and Petitioner exited the car and walked towards the

2

storage unit, concealing firearms under their clothes and in their pockets. They then placed the guns in a compartment inside the rental car. Petitioner and Stevens then joined the rest of the group in the storage unit. The UC asked Stevens and Petitioner whether they were ready, and they confirmed they were. At this time, the UC pretended to receive a call from a drug organization member and advised the group that it was time to start the robbery. Law enforcement then moved in and arrested Petitioner and the other defendants.

On November 23, 2010, a federal Grand Jury charged Petitioner in a three-count indictment with conspiring to affect commerce by robbery, possession of a firearm in furtherance of a crime of violence, and conspiring to possess with intent to distribute five kilograms or more of cocaine. Dkt. No. 22. A Grand Jury later charged him in a three-count superseding indictment for the same offenses. Dkt. No. 35. The jury trial commenced on March 14, 2011. On March 18, 2011, the jury convicted Petitioner of counts one and two, but acquitted him of count three. Dkt. No. 166. On July 22, 2011, the Court sentenced Petitioner to 120 months imprisonment, 60 months of incarceration on Count One, and a consecutive 60 months on Count Two. Dkt. No. 276. On July 28, 2011, Petitioner filed his Notice of Appeal, and on January 3, 2013, the Fourth Circuit affirmed his conviction. Dkt. Nos. 277, 319.

## II. Discussion

Petitioner seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation and internal quotation marks omitted). It is well settled that bare, conclusory allegations are insufficient to entitle a

3

petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

### A. *Ineffective Assistance of Counsel*

Petitioner claims that he received ineffective assistance of counsel, in violation of his Sixth Amendment right, for two principal reasons: (1) his counsel's failure to object to an erroneous verdict form; and (2) his counsel's failure to object to a variant sentence and challenge it on appeal. In the landmark *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel. The first prong requires a showing that counsel failed to provide reasonably effective assistance—that is, that counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687–88. This prong presents a high burden because the Court must "presume[] that the defendant's counsel rendered objectively effective performance." *See United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007). The second prong requires the defendant to prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Importantly, a court need not review the reasonableness of counsel's performance if the petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998) (citing *Strickland*, 466 U.S. at 697). Under this standard, the Court will address each of Petitioner's arguments.

#### i. *Counsel's Alleged Failure to Object to an Erroneous Verdict Form*

With respect to the first alleged ground of ineffective assistance of counsel, Petitioner maintains that the verdict form in this case was defective because it required the jury to decide whether he "carr[ied] a firearm in furtherance of a crime of violence," while the Superseding Indictment and the statute both refer to carrying firearms "during and in relation to any crime of

4

violence." Pet'r's Br. 5, 7. He argues that this disparate language had the effect of constructively amending the Superseding Indictment. By failing to object to the verdict form on this basis, Petitioner claims that his counsel was ineffective. *Id.* at 11.

The jury in this case found Petitioner guilty of "carrying firearms in furtherance of a crime of violence" as well as of "possession of firearms in furtherance of a crime of violence." Dkt. No. 166. Petitioner does not challenge this latter verdict, nor could he, as the language of the verdict form on the element of possession tracks that of the statute. Notably, the statute reads disjunctively, and states that "any person who, during and in relation to any crime of violence or drug trafficking crime[...], uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" shall be punished according to the statute. 18 U.S.C. § 924(c)(1)(A). Therefore, the jury's alternative guilty finding on possession was sufficient to convict Petitioner of Count Two. As the Court stated in its instructions to the jury:

> It is not necessary for the Government to prove that a defendant both possessed and carried a firearm as alleged in the indictment. It is sufficient if the Government proves beyond a reasonable doubt that a defendant did one of the alternative acts as charged, as long as you all agree that the same particular alternative act was committed.

Trial Tr. 736–37. This instruction was entirely consistent with the law in this Circuit. *See United States v. Rhynes*, 206. F.3d 349, 384 (4th Cir. 1999) ("Where a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive. The district court, however, can instruct the jury in the disjunctive."). It should also be noted that a verdict form does not exist to lay out the elements of the offense; instead, it is used for the jury to designate its verdict as to each count. *United States v. Overholt*, 307 F.3d 1231, 1248 (11th Cir. 2002). In this case, the jury found Petitioner guilty of one of the explicitly enumerated means of violating the statute—possession of a firearm in furtherance of a crime of violence or drug

trafficking crime. As a result, his counsel's failure to object to the allegedly erroneous language in the verdict form as to the other means of violation did not cause him to suffer prejudice.

Petitioner also claims that the verdict form resulted in a constructive amendment to the Superseding Indictment, in that it allowed the jury to find him guilty of "carrying a firearm in furtherance of a crime of violence," a non-existent crime. A constructive amendment occurs where "the government, through its presentation of evidence and/or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, ... such that the defendant is actually convicted of a crime other than that charged in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (citations and internal quotation marks omitted). Upon examination of the Court's instructions to the jury, it is evident that this was not the case. Indeed, the Court correctly recited the language of 18 U.S.C. § 924(c), including the essential elements of the offense charged in Count Two of the Superseding Indictment. Trial Tr. 729–36. The Court instructed the jury that, to find Petitioner guilty of Count Two, the government would have to prove the following three elements beyond a reasonable doubt:

> (1) that the defendant committed the crime of conspiracy to commit robbery as charged in Count 1;
> (2) that the defendant carried a firearm during and in relation to the commission of the crime charged in Count 1, or
> knowingly possessed a firearm in the furtherance of the crime charged in Count 1; and
> (3) that the defendant acted knowingly and intentionally.

Trial Tr. 730–31. The Court then elaborated on the distinction between the phrases "carries a firearm" and to "possess a firearm." It explained that "the term 'to possess a firearm in furtherance of' the crime means that the firearm helped forward, advance or promote the commission of the crime," while the phrase "'carries a firearm' requires that a defendant knowingly possess a firearm and that he bear, move, convey or transport it in some manner." *Id.*

at 733–34. Significantly, there is a presumption that juries follow instructions from the bench. *United States v. Johnson*, 587 F.3d 625, 631 (4th Cir. 2009), *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Even so, the Court gave the jury copies of the same instructions in writing. Trial Tr. at 697, 708–09, 743–44, 767.

In sum, because the Court's instructions were proper, Petitioner fails to establish that the elements of the offense charged in Count Two were altered due to a comingling of the 'carry' and 'possession' elements in the verdict form. Accordingly, his counsel did not provide ineffective assistance by failing to object to it. Even assuming his counsel rendered deficient performance, because the language of the verdict form on possession unmistakably tracked that of the statute, the jury's guilty finding on possession results in an absence of prejudice to Petitioner. For these reasons, his first ground for ineffective assistance of counsel will be denied.

### ii. *Counsel's Alleged Failure to Object to His Variant Sentence on Count One*

As to his second ground of ineffective assistance of counsel, Petitioner claims that the Court committed procedural error in two ways. First, he claims that the Court failed to consider "the nature of the circumstances of the offense and the history and characteristics of the defendant, other than to focus on the fact that he had prior conviction to manslaughter." Pet'r's Br. 16. Second, he argues that the Court erred by announcing it intended to vary upward from the applicable guidelines prior to hearing arguments from counsel. Pet'r's Br. 16. Petitioner contends that his counsel's failure to object to these alleged errors and subsequently challenge the sentence on direct appeal constituted ineffective assistance.

Despite Petitioner's claims, there is nothing to suggest that counsel failed to represent him adequately at sentencing. Prior to the hearing, his counsel submitted a "Memorandum in Aid of Sentencing" that highlighted the mitigating factors under 18 U.S.C § 3553. Dkt. No 262. He attached to this memorandum letters from friends and family of the Petitioner, in which they

7

explained his personal history and identified his good qualities. *Id.* At the sentencing hearing, counsel explained that Petitioner was a "hard-working family man" and that he "was trying to do the right thing before this incident occurred." Sentencing Hr'g Tr. at 4, 7. Moreover, upon learning that the Court was inclined to vary upward because of the nature of the offense and Petitioner's prior conviction, counsel argued zealously against the variance, maintaining that Petitioner's prior conviction was for involuntary manslaughter—a reckless act as opposed to intentional one. *Id.* at 6–7. In light of all the measures taken before and at sentencing, it is clear that counsel rendered reasonably effective assistance in his advocacy for the Court's consideration of Petitioner's character and the circumstances surrounding his criminal history.

As to Petitioner's other claim, the Court committed no procedural error by revealing its desire to vary upwards. Significantly, it was not required to notify counsel before sentencing that it was pondering a variance *sua sponte*. *See Irizarry v. United States*, 553 U.S. 708, 715–16 (2008). The Court did, however, allow defense counsel to argue extensively on the issue at the hearing. Moreover, although it was not required to discuss explicitly every single § 3553(a) factor, the record shows that the Court indeed considered all § 3553(a) factors when making its determination. The Court acknowledged that it had read Petitioner's position on sentencing, including the letters written on his behalf. Sentencing Hr'g Tr. 3. It also noted that it had presided over the three-day trial and was familiar with the facts of the case. *Id.* at 5. The Court was particularly impressed by the fact that Petitioner had not been dissuaded by his previous sentence of imprisonment for having killed someone with a firearm, and that his further involvement in an armed robbery demonstrated that he continued to be an "extreme danger to the community." *Id.* at 5.

The Court also considered mitigating factors in determining Petitioner's sentence. The Court recognized that after serving two years for involuntary manslaughter, Petitioner worked

8

hard to get on the right track. The Court took into account that he was working for an employer that thought highly of him, and that he had acted responsibly up until the time he joined the conspiracy. *Id.* at 9. After weighing these mitigating factors against other Section 3553(a) factors, the Court decided that an upward sentence variance was in fact necessary. *Id.* at 9–10. In light of the Court's reasoned and documented consideration following argument by counsel, defense counsel had no foundation upon which to challenge Petitioner's sentence on appeal and thus was not ineffective for failing to do so.

As for the second prong of the *Strickland* test, Petitioner also fails to prove prejudice resulting from his counsel's failure to appeal his sentence. Sentences are reviewed on appeal for reasonableness. *Gall v. United States*, 552 U.S. 38, 41 (2007). Under a "differential abuse-of-discretion standard," appellate courts seldom second-guess a sentencing judge's assessment of the various aggravating and mitigating factors that inform the ultimate sentence. *Id.*; *United States v. Gilliard*, 671 F.3d. 255, 260–61 (2nd Cir. 2012). For the above reasons, the Court concludes that Petitioner's sentence was reasonable and will therefore deny his second ground for ineffective assistance of counsel.

### B. Allegedly Erroneous Jury Instructions Pertaining to Count Two

In a supplemental brief to the Court,[1] Petitioner challenges his conviction on Count Two, stating that "because of the comingling of the two distinct elements carry and possession, the trial Court's jury instructions were erroneous because they failed to require that Petitioner, McCalister obtained the requisite knowledge." Pet'r's Br. 3. In support thereof, he cites the Supreme Court's recent decision in *Rosemond v. United States*, 134 S. Ct. 1240 (2014), as a basis for this Court's reconsideration of the issue of "criminal intent associated with the

---

[1] As stated above, the government informed the Court that it would not file a response to the supplemental pleading. The Court will therefore consider the *Rosemond* issue without a position from the government.

9

Petitioner's culpability to commit the unlawful act." Pet'r's Br. 3, 4. As an initial matter, *Rosemond* is not retroactively applicable to cases on collateral review unless and until the Supreme Court declares it so. *See Tyler v. Cain,* 533 U.S. 656, 663 (2001) (internal quotation marks omitted); *see also, e.g., Beale v. Andrews*, No. 5:14-hc-2064-fl, 2015 WL 4066565, at *3 (E.D.N.C. July 2, 2015). Notwithstanding, the Court will consider the issue on the merits.

Upon careful review of the ruling in *Rosemond*, the Court concludes that it does not require vacatur of Petitioner's conviction on Count Two because the element of requisite knowledge was in fact sufficiently articulated in the jury instructions. In *Rosemond*, the defendant took part in a drug deal in which he or one of his confederates fired a gun. Because the shooter's identity was disputed, the Government charged Rosemond with violating 18 U.S.C. § 924(c) for using a gun in connection with a drug trafficking crime or, in the alternative, aiding and abetting that offense under the conspiracy statute, 18 U.S.C. § 2. The district judge instructed the jury that Rosemond was guilty of aiding and abetting the substantive offense if he "knew his cohort used a firearm in the drug trafficking crime" and "knowingly and actively participated in the drug trafficking crime." *Rosemond*, 134 S. Ct. at 1244 (citation and internal quotation marks omitted). This instruction deviated from Rosemond's proposed instruction that the jury consider whether he "intentionally took some action to facilitate or encourage the use of the firearm." *Id.* Under the former instruction, Rosemond was convicted and the Tenth Circuit affirmed.

The Supreme Court reviewed the issue and reversed, ruling in favor of Rosemond. It held that the district court's jury instructions failed to articulate the element of requisite knowledge with clarity, and were thus erroneous. The Court explained as follows:

> [T]he § 924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When

10

> an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. As even the Government concedes, an unarmed accomplice cannot aid and abet a § 924(c) violation unless he has "foreknowledge that his confederate will commit the offense with a firearm." For the reasons just given, we think that means knowledge at a time the accomplice can do something with it—most notably, opt to walk away.

*Id.* at 1249–50 (citation omitted). By contrast, the district court's instructions had directed the jury to consider *whether* Rosemond "knew his cohort used a firearm," not *when* Rosemond obtained the requisite knowledge. *Id.* at 1244.

Here, Petitioner argues that the instructions' comingling of the distinct elements of carry and possession prejudiced him in that they did not properly instruct the jury on the element of requisite knowledge. It appears, however, that Petitioner has taken a sentence of the jury instructions out of context. It is well established that "[an] instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). In its instructions to the jury, the Court stated that, in order for the defendants to be found guilty of aiding and abetting, the government would have to prove beyond a reasonable doubt that they: (1) "knew that the crime charged was to be committed or was being committed," (2) "knowingly did some act for the purpose of aiding the commission of that crime," and (3) "*acted with the intention* of causing the crime charged to be committed." Trial Tr. 731 (emphasis added).

11

Upon close examination of the instructions, it is evident that any confusion over the element of requisite knowledge was subsequently clarified. Although prongs one and three of the aiding and abetting instruction may have seemed unclear as to *when* the requisite knowledge must be obtained, the Court elaborated that:

> [m]erely being present at the scene of the crime or *merely knowing that a crime is being committed or is about to be committed* is not sufficient conduct for the jury to find that the defendants aided and abetted the commission of the crime. The Government must prove that a defendant *knowingly and intentionally* associated himself with the crime in some way as a participant, someone who *wanted the crime to be committed*, and not as a mere spectator.

*Id.* at 732 (emphasis added). Without explicitly stating the words "advance knowledge," the Court sufficiently communicated to the jury that, to convict Petitioner of aiding and abetting a violation of § 924(c), the government would have to prove that Petitioner "knowingly and intentionally" associated himself with the crime, "wanted the crime to be committed," and was not a "mere spectator." *Id.* These instructions are analogous to the aiding and abetting standard approved by the Supreme Court in *Rosemond*, providing that "a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 134 S. Ct. at 1245 (citing 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003)).

It is thus clear to this Court that the jury instructions in this case were sufficient on the element of requisite knowledge. Specifically, they required the jury to consider whether a particular defendant intentionally participated in a crime that he wanted to be committed in the future—in other words, whether he intended, based on his advance knowledge, for the crime to be committed. Furthermore, the evidence amply supported the jury's finding that Petitioner had the requisite knowledge. On the day scheduled for the robbery, the UCs asked the defendants, including Petitioner, whether they were ready and willing to commit the crime. Defendants,

including Petitioner, confirmed that they were. This response demonstrates that he was given the opportunity to walk away from the crime, but chose not to. Additionally, in contrast with Rosemond, Petitioner was not oblivious as to the use of firearms for the robbery as he himself brought firearms to the scene and placed them into the getaway car. This evidence eliminates any doubt as to whether Petitioner understood—*prior* to the commission of the crime—that firearms were to be used. Accordingly, because the jury instructions adequately conveyed the advance knowledge requirement, and because the record supported an affirmative finding on that element as to Petitioner, there is no error that would justify vacating his conviction on Count 2.

Lastly, Petitioner points to the Supreme Court's decision in *Bailey v. United States*, in which it held that "[t]he "carry" prong of § 924(c)(1), for example, brings some offenders who would not satisfy the 'use' prong within the reach of the statute." *Bailey v. United States*, 516 U.S. 137, 150 (1995). Petitioner maintains that the Supreme Court clearly held that use and carriage were distinct from mere possession. As a result, he argues that a comingling of these elements in the jury instructions led to his erroneous guilty finding on Count 2. Of course, however, the *Bailey* decision has since been abrogated. *Abbott v. United States*, 562 U.S. 8, 15–17 (2010). In *Abbott*, the Supreme Court recognized a congressional revision of § 924(c)(1), prompted by the decision in *Bailey*: "In proscribing 'use' of a firearm, *Bailey* held, § 924(c)(1) did not reach 'mere possession' of the weapon. Congress legislated a different result; in the 1998 revision, colloquially known as the Bailey Fix Act, the Legislature brought possession within the statute's compass." *Id.* at 16–17 (2010) (citations and internal quotation marks omitted).

In this case, Petitioner was found guilty of "possession of firearms in furtherance of a crime of violence," which, as above, has been held to be a valid means of violating § 924(c)(1). Dkt. No. 166. Significantly, Petitioner does not challenge this finding. He thus fails to prove

13

that he was convicted of Count 2 due to erroneous jury instructions. The Court will therefore deny Petitioner's last claim based on allegedly erroneous jury instructions.

### III. Conclusion

For the foregoing reasons, and for good cause, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 324) will be denied.

An appropriate Order shall issue.

August 18, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge